

TRINITY CENTRE
115 BROADWAY, 17TH FLOOR
NEW YORK, NY 10006
TEL: (212) 566-1000
FAX: (212) 566-1068

March 30, 2020

**Via Email & ECF**
Honorable Laura Taylor Swain
United States District Judge
500 Pearl Street
New York, New York 10007-1312

Re: <em>United States v. Devon Brown</em><br>
Ind. # 19 Cr. 792 (LTS)

Dear Judge Swain:

  I am CJA counsel for Defendant, Devon Brown. I write to respectfully move the Court— pursuant to 18 U.S.C. § 3142, Rule 46 of the Federal Rules of Criminal Procedure, —for an order directing Mr. Brown's pretrial release on his own recognizance with standard conditions of release and the special condition of home confinement with electronic monitoring.  In the alternative, I seek a bail hearing to address this request as soon as the Court is available.

**Introduction**

  [REDACTED] He is presently housed in general population at the MCC, which we understand houses, <u>at least</u>, one inmate infected with COVID-19.

  By way of background, On November 7, 2019, Mr. Brown was arrested and initially appeared before a Magistrate Gorenstein.  He was arraigned on an indictment charging him with 18 U.S.C. §922(g)(1) (Felon in Possession of Ammunition); and 18 U.S.C. §924(c) (Firearms Possession).   Mr. Brown entered a Not Guilty plea, and, upon consent of counsel, Mr. Brown was ordered detained without prejudice to make a future bail application.  Since this arraignment, he has been in custody at the MCC.



1





The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." *See* 18 U.S.C. § 3142(i). This dangerous, severely contagious, and unprecedented pandemic, in conjunction with Mr. Brown's vulnerable medical condition, makes our proposal of strict home confinement with electronic monitoring a compassionate, just, and safe alternative to his detention. Therefore, we respectfully propose that this Court release Mr. Brown, under our suggested bail conditions, which include home detention, electronic monitoring, and an unsecured bond, until this pandemic is under control. In the alternative, we request a bail hearing to address this request.

### **Background of COVID-19 Pandemic**

As of today, the new strain of coronavirus that causes COVID-19 has infected more than 741,000 people, leading to at least 35,000 deaths worldwide. [3] The World Health Organization has officially classified it as a pandemic on March 11, 2020 and state of emergencies have been declared in most major cities in the United States. The CDC has issued guidance that individuals at higher risk of contracting COVID-19— adults over 60 years old and people with chronic medical conditions—take immediate preventative actions, including avoiding crowded areas and staying home as much as possible. However, while adults over sixty years old and people with chronic medical conditions are at heightened risk for COVID-19, young, otherwise healthy individuals are not immune from infection. Data from the Centers for Disease Control and Prevention (CDC) shows that nearly 40% of patients hospitalized from coronavirus were 20 to 54 years old. In New York, 18- to 49-year-olds comprise more than half of all cases in the state. [4]

---

[1] American Diabetes Association Web Site, https://www.diabetes.org/coronavirus-covid-19
[2] CDC Website, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fasthma.html
[3] 2 Coronavirus Map: Johns Hopkins Coronavirus Resource Center Map (March 30, 2020), https://coronavirus.jhu.edu/map.html
[4] Younger Adults Make up Big Portion of Coronavirus Hospitalizations in U.S., The New York Times (Mar. 20, 2020), at https://www.nytimes.com/2020/03/18/health/coronavirus-young- people.html.



TRINITY CENTRE
115 BROADWAY, 17TH FLOOR
NEW YORK, NY 10006
TEL: (212) 566-1000
FAX: (212) 566-1068

**Ramifications of COVID-19 on Inmates**

In the SDNY and EDNY, and in many other districts, there is a movement to "depopulate" the BOP due to this ongoing serious and public health crisis. A prison doctor recently wrote a letter to the editor of the LA Times (3/20/20) stating, "Prisons are petri dishes for contagious respiratory illnesses." Inmates cycle in and out of Bureau of Prisons (BOP) facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening or testing. In each of our pre-trial facilities – MCC and MDC – there have been at least one confirmed positive test for COVID-19 and that number is all but certain to rise. Indeed, just today, the first known federal inmate died at a low-security prison in Louisiana from COVID-19. [5]

The MCC New York and the MDC Brooklyn have proven—recently and repeatedly—that they are unable to protect the health and safety of defendants in their custody. The MCC houses approximately 700 people and the MDC houses approximately 1,600 people. The majority of the people detained are housed in small, two-person cells with a shared toilet and sink; they eat meals and have recreation in groups of 70 or more. Other units are open dormitories that house 70 or more inmates without the ability to separate. The medical care at both facilities has repeatedly failed to adequately address even routine medical conditions such as diabetes, pregnancy, and anemia. [6] I have personally spoken to clients who inform me that they have no masks, hand sanitizer or guidance on how to remain safe and apart from their fellow inmates. Notably, Judge Allison J. Nathan, in a decision issued on March 18, 2020, (see *U.S. v. Dante Stephens*, 15-CR-095) wrote, "in the event of an outbreak at the Metropolitan Correctional Center, substantial medical and security challenges would almost certainly arise."

To date, neither the MCC nor MDC have met even the most basic recommendations of the CDC for preventing the spread of the coronavirus. Neither facility even has hand sanitizer available. [7] Upon information and belief, inmates are coughing and complaining that they are sick, yet no one is being allowed to test for COVID-19. Both facilities plan to provide bar soap to inmates, but as of now, not every inmate even has access to soap. Only those inmates who have money for commissary will be able to purchase antibacterial soap. Adequate handwashing and basic hygiene are stymied by the fact that no hand sanitizer is available to inmates. Neither the MDC nor the MCC has any idea when, if ever, it will have tests for COVID-19 available to inmates. Even staff cannot be sure that they are not

---

[5] https://reason.com/2020/03/29/first-known-federal-inmate-dies-of-coronavirus/
[6] E.g., National Association of Women Judges (NAWJ) Women in Prison Committee (WIP) Second Visit to BOP's Metropolitan Detention Center (MDC), Brooklyn, New York, June 3, 2016, at https://bit.ly/39JRhdW.
[7] 42 *see* Federal Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan*, https://www.bop.gov/resources/news/20200313_covid-19.jsp.



TRINITY CENTRE
115 BROADWAY, 17TH FLOOR
NEW YORK, NY 10006
TEL: (212) 566-1000
FAX: (212) 566-1068

carrying the virus, and tests are not being offered to people at area hospitals unless they are very ill.

In addition to unhygienic living conditions, the high volume of people in and out of MDC further increases the likelihood that COVID-19 will spread rampantly throughout the institution. On March 13, 2020, nearly two weeks after the first confirmed case of coronavirus in New York State, the Bureau of Prisons announced a 30-day suspension of all visits to all federal correctional facilities. Nevertheless, prohibiting visits to correctional facilities is insufficient to stem the spread of illness. "[T]here is no way to stop the daily flow of guards, teachers, and food service and healthcare workers. Someone is certain to bring the virus in and take it back out while they are asymptomatic." [8]

Further, additional people will be arrested—people who have been exposed in the community as the coronavirus spreads. If they are not symptomatic, they will be brought into the MCC potentially infected. In addition, they will be held with the existing population in very close quarters under poor sanitary conditions. [9]

**Recent Decisions by SDNY and EDNY Judiciary re COVID-19 Crisis**

Recently, Courts have begun to actively take notice of this major health pandemic and how it is effecting defendants who are in custody. On March 12, 2020, EDNY Magistrate Judge James Orenstein decided that detaining a pre-trial defendant who was using drugs while on supervision would present too great a risk to the staff and inmates at MDC Brooklyn, ruling that part of the "danger to the community" calculus had to include the risk of a new inmate bringing the virus into the facility. *United States v. Raihan*, 20 Cr. 68 (BMC) (Mar. 12, 2020).

On March 19, 2020, thirteen days after having remanded defendant Dante Stephens, Judge Nathan reversed herself "in light of circumstances that have changed since the March 6 hearing," namely, "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic." *United States v. Stephens*, 15-CR-95 (AJN). In setting bail, Judge Nathan noted, "[a] comprehensive view of the danger the Defendant poses to the community requires considering all factors," including COVID-19. *Id.* Similarly, on March 19, 2020, the threat of coronavirus led Judge Ramos to release a formerly detained individual on bail. *See United States v. Santiago Ramos*, 20-CR-04 (ER).

---

[8] *Letters to the Editor: A prison doctor's stark warning on coronavirus, jails and prisons*, Los Angeles Times (Mar. 20, 2020), at https://www.latimes.com/california/story/2020-03-20/prison-doctors-stark-warning-on-coronavirus- and-incarceration.

[9] Obviously, the dangerous ramifications of this virus affects state inmates as well. On March 20, 2020, the New York City Department of Correction announced that one inmate and seven staff members in the city jails had been diagnosed with COVID-19. At least 58 additional people are being held in contagious disease and quarantine units in the city's jail system. The chairperson of the New York City Board of Correction urged, "The best path forward to protecting the community of people housed and working in the jails is to rapidly decrease the number of people housed and working in them."



TRINITY CENTRE
115 BROADWAY, 17TH FLOOR
NEW YORK, NY 10006
TEL: (212) 566-1000
FAX: (212) 566-1068

Most recently, Judge Engelmayer was faced with an application from a defendant pursuant to the CARES Act that the balance of his sentence (about 7-months) be served in home confinement. [10] *United States v. William Knox,* 15 Cr. 445 (PAE). Defense counsel urged the Court to issue a recommendation today that the defendant be permitted to serve his sentence in home confinement as soon as the law permits him to do so. Judge Engelmayer granted defendant's request and recommended that the BOP allow him to serve the remainder of his sentence with 1 month in a halfway house and 6 months in home confinement. Judge Engelmayer found that the language in the CARES ACT, "combined with the exigencies of the current public health situation and the clear directive from Attorney General Barr, strongly counseled in favor of BOP's quick determination as to the appropriateness of [defendant] serving the remainder of his sentence outside of prison." *Id.*

**The Bail Reform Act Supports Mr. Brown's Release**

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).



medication to treat his

---

[10] The CARES Act is currently before the House of Representatives includes a provision authorizing the BOP to increase the length of time during which an inmate may serve his sentence in home confinement. Also, Attorney General William Barr issued a directive last week authorizing the BOP to increase its use [of] home confinement in response to the COVID-19 pandemic.



TRINITY CENTRE
115 BROADWAY, 17TH FLOOR
NEW YORK, NY 10006
TEL: (212) 566-1000
FAX: (212) 566-1068

Courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As EDNY Senior Judge Jack Weinstein held even before the pandemic, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"); *see also United States v. Adams*, No. 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (releasing on home detention defendant charged with possession of child pornography, because of diabetes, heart condition and open sores); *United States v. Johnston*, No. 17-00046 (RMM) 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of colon surgery released to custody of wife for 21 days); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (badly wounded defendant released to custody of relatives).

This Court should consider the "total harm and benefits to prisoner and society" that continued pretrial imprisonment of Mr. Brown will yield, relative to the heightened health risks posed to Mr. Brown. *See United States v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of projected impact of jail and prison conditions on defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004)(reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case"); *United States v. Francis*, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention).

The text of Section 3142(i) provides that the Court may temporarily release a detained defendant where a "compelling reason" necessitates such release. Judge Nathan, in her recent decision in *U.S. v. Dante Stephens* (15-CR-095), found that "[c]ompelling reasons may exist where release is necessary for the preparation of the defendant's defense … or where the defendant's serious medical conditions warrant release." In reaching that conclusion, Judge Nathan cited *United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (explaining that a defendant who is denied bail "retains the ability to request[,] . . . in extraordinary circumstances, temporary release under § 3142(i)" should future developments with respect to his medical conditions so warrant); *see also United States v. Birbragher*, No. 07-cr-1023-(LRR), 2008 WL 1883504, at *2 (N.D. Iowa Apr. 25, 2008) (describing *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993), and *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002), as cases in which courts found "compelling reason" to temporarily release defendants due to the defendants' serious medical issues.

Ultimately, after weighing the issues in Mr. Stephens' case, Judge Nathan found that



> The obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason under 18 U.S.C. § 3142(i). The spread of COVID-19 throughout New York State—and the country—has compelled the BOP to suspend all visits—including legal visits, except as allowed on a case-by-case basis—until further notice. This suspension impacts the Defendant's ability to prepare his defenses to the alleged violation of supervised release in advance of the merits hearing scheduled for March 25, 2020. … [T]he Court concludes that these circumstances necessitate the Defendant's temporary release.

(March 18, 2020 Decision and Order, Hon. Allison J. Nathan, *United States v. Dante Stephens*, 15- CR-95).

Mr. Brown, like Mr. Stephens, is housed at the MCC New York, and faces the same challenges in preparing his defense. For this reason, I submit that Mr. Brown's reasons for release are even more compelling than those that Judge Nathan found sufficient to warrant Mr. Stephens' temporary release.

**Conditions of Release Are Available That Allow Mr. Brown to Be Treated Humanely Without Danger to the Community**

During this temporary release, we suggest that Mr. Brown be subject not only to home confinement with electronic monitoring, but that the Court consider other restrictive conditions of release. [11] Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent crime while on release. In the Eastern District of New York, for example, Chief U.S. Pretrial Services Officer Roberto Cordeiro reports that in Fiscal Year 2019, only six of 1,300 defendants (0.5%) under Pretrial Services' supervision failed to appear in court; only 2.8% were rearrested. The elderly and chronically ill, no matter what crime they are accused of, pose a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives.



---

[11] Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary (September 2018) at https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.



**Conclusion**

The above-proposed bail package, in light of the COVID-19 pandemic, which includes home confinement, electronic monitoring, and a signed bond by co-signors, is more than sufficient to ensure Mr. Brown's appearance before this Court. The Bail Reform Act "permit[s] the temporary release of the person, in the custody of a United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). There is no greater necessity for the preparation of a "person's defense" than access to counsel. In addition, there is no more "compelling reason" than a person's physical health.

███████████████████████████████████████████████████████████████ For all of the above reasons, the Court should release him on the proposed bond, or, in the alternative, conduct a bail hearing to address these issues.

Thank you for your consideration.

Very truly yours,

SULLIVAN | BRILL, LLP

_____
By: Steven Brill, Esq.

8